**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SHAHEEN KHAN,

               Plaintiff,

          -v-                          1:25-CV-1033 (AJB/PJE)

JOHN ARMSTRONG *et al.*,

               Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

## I.     INTRODUCTION

On August 3, 2025, plaintiff Shaheen Khan ("plaintiff"), a United States citizen, commenced this action against defendants John Armstrong, a Senior Official of the Bureau of Consular Affairs, and Natalie A. Baker, the Deputy Chief of Mission at the United States Embassy in Islamabad (collectively, "defendants").

Plaintiff asserts claims for Administrative Procedure Act ("APA") and mandamus (under 28 U.S.C. § 1361) relief arising out of an alleged delay in processing an immigrant visa petition filed on behalf of plaintiff's sister and her derivative beneficiaries. According to plaintiff's complaint, defendants have failed to timely discharge their obligation to review and adjudicate visa applications under 8 U.S.C. § 1202(b). Dkt. No. 1 ("Compl.").

On May 6, 2026, defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 10. Plaintiff, who is represented by counsel, has not opposed the motion, and the deadline for doing so has passed. *See id.*

The motion will be considered on the basis of the available submissions without oral argument.

## II.   BACKGROUND

Plaintiff Shaheen Khan is a United States citizen.  Compl. ¶ 1.  On April 17, 2007, plaintiff filed an I-130 Petition for Alien Relative with the United States Citizenship and Immigration Services ("USCIS") on behalf of her sister, Shamim Khan, and her four derivative beneficiaries.  *Id.* ¶ 12; Dkt. No. 1-1, Ex. A; *see also id.* at 2.  USCIS approved the petition on August 17, 2010.  *Id.* ¶ 13; Dkt. No. 1-1, Ex. B.

Following approval, the petition was forwarded to the National Visa Center ("NVC") for consular processing.  Compl. ¶ 14; Dkt. No 1-1, Ex. C.  Plaintiff alleges that she timely paid all required fees and submitted all requested forms and supporting documentation through the Consular Electronic Application Center ("CEAC").  *Id.* ¶ 15; Dkt. No. 1-1, Ex. D.  According to the complaint, the visa petition became documentarily qualified, *i.e.*, all required documents had been submitted and the application was ready for adjudication by a consular officer, on May 7, 2024. *Id.* ¶ 16; Dkt. No. 1-1; Ex. E.

Plaintiff alleges that, despite satisfying all documentary requirements for processing, neither the NVC nor the United States Embassy in Islamabad had scheduled an immigrant visa interview or issued a final decision on her visa petition as of the date of the complaint's filing.  Compl. ¶¶ 17–19. Plaintiff further alleges that she made repeated inquiries concerning the status of the petition but received neither a final adjudication nor meaningful updates regarding the petition's progress. *Id.* ¶ 18.

On August 3, 2025, plaintiff commenced this action seeking mandamus and APA relief. *See* Compl. at 2.  In support of their motion, defendants have submitted a declaration establishing

that the beneficiary and derivative applicants appeared for a consular interview at the United States Embassy in Islamabad on December 15, 2025.  Dkt. No. 10-2 ¶ 4–5.  Defendants claim that, following that interview, a consular officer refused the visa applications pursuant to § 221(g) of the Immigration and Nationality Act ("INA").  *Id.*

## III.    LEGAL STANDARDS

### A.  12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (internal citations omitted).  And "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Id.* (internal citations omitted).

### B.  12(b)(6)

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

Plaintiff alleges that defendants have unreasonably delayed adjudication of the visa petition in violation of 8 U.S.C. § 1202(b), the Mandamus Act, and the APA. Compl. ¶¶ 20–41. As relief, plaintiff seeks an order compelling defendants to schedule a consular interview for the beneficiary and derivative applicants and to issue a final decision on the underlying visa petition. *See id.* at 8–9.

Defendants move to dismiss on several grounds. First, defendants argue that the doctrine of consular nonreviewability bars judicial scrutiny of plaintiff's claims. Dkt. No. 10-1 ("Defs.' Mem.") at 15–17. Second, defendants contend that plaintiff's claims are moot because the beneficiary and derivative applicants have since appeared for a consular interview and their visa applications have been refused pursuant to § 221(g) of the INA. *Id.* at 18–19. And third, defendants maintain that plaintiff's claims fail on the merits because neither the APA nor the

Mandamus Act authorizes the Court to compel any further action following the consular officer's refusal of the visa applications under § 221(g) and any alleged delay is reasonable. *Id.* at 19–28. Plaintiff has not opposed defendants' motion, leaving defendants' arguments unchallenged.

Under INA § 221(g), a consular officer must refuse to issue a visa if it appears "from statements in the application, or in the papers submitted therewith" that the alien is ineligible for a visa under any provision of law, or if the officer "knows or has reason to believe that such alien is ineligible to receive a visa[.]" 8 U.S.C. § 1201(g). Consistent with that statutory framework, Department of State regulations provide that, once a visa application has been properly completed and executed before a consular officer, the officer must either "issue the visa" or "refuse the visa under INA [§] 212(a) or [§] 221(g) or other applicable law." 22 C.F.R. § 42.81(a). "If the consular officer determines that he does not have sufficient information to establish visa eligibility, he may 'refuse' the visa pending further administrative processing pursuant to [§] 221(g) of the INA, which typically consists of additional information gathering." *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 7 (D.D.C. 2024) (citing U.S. Dep't. of State, Administrative Processing Information;[1] 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022)).

As the United States Department of State Foreign Affairs Manual and Handbook (the "FAM")[2] explains, "[a] refusal under INA [§] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B). Although a consular officer may later reconsider a § 221(g) refusal based on additional evidence or the completion of administrative processing, *see* 22 C.F.R. § 42.81(e); 9 FAM 504.11-4(A), the application remains

---

[1]  *Available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html.

[2]  The FAM "governs the duties and responsibilities of consular officers in issuing and refusing immigrant visas." *Alharbi v. Miller*, 368 F. Supp. 3d 527, 553 (E.D.N.Y. 2019).

refused unless and until the consular officer determines that the applicant has established eligibility for a visa.

### A. Consular Nonreviewability

First, defendants argue that the doctrine of consular nonreviewability bars judicial relief in this case. The Court disagrees.

The doctrine of consular nonreviewability generally precludes judicial review of a consular officer's decision to issue or deny a visa. *See Alhariri v. Blinken*, 2025 WL 1434317, at *5 (E.D.N.Y. May 19, 2025); *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 258 (E.D.N.C. 2024). This is because "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Dep't of State v. Munoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)).

Courts in this Circuit have applied the doctrine of consular nonreviewability to "preclude[] judicial review not only under the [INA], but also under other jurisdictional statutes, such as the APA," and have extended that principle to unreasonable-delay claims brought under the APA and the Mandamus Act. *Al Saidi v. U.S. Embassy in Djibouti*, 544 F. Supp. 3d 289, 299 (E.D.N.Y. 2021); *see also Nawaz v. Dep't of State*, 2024 WL 99486, at *4 (E.D.N.Y. Jan. 9, 2024).

At the same time, courts have recognized a distinction between challenges to the substance of a visa determination and claims seeking to compel agency action allegedly withheld or unreasonably delayed. *See Ramizi*, 745 F. Supp. 3d at 258 ("[C]onsular nonreviewability 'does not bar suits that merely seek to compel some agency action—regardless of the substance of that action.'") (quoting *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 12 (D.D.C. 2022) and collecting cases).

Here, defendants argue that the doctrine bars plaintiff's claims because the consular officer has already refused the visa applications pursuant to § 221(g), and any order directing further action would improperly intrude upon the visa-adjudication process. Defs.' Mem. at 15–20. But refusal under § 221(g) pending further administrative processing differs materially from a final visa denial. Although a § 221(g) refusal is legally a refusal, the application may be reconsidered upon the completion of administrative processing or the submission of additional information. *See* 22 C.F.R. § 42.81(e); 9 FAM 504.11-4(A). And here, defendants appear to acknowledge that the visa applications have been placed into post-refusal administrative processing. *See* Defs.' Mem. at 15 ("[Consular nonreviewability] extends to the consular officer's decision to place the visa application into post-refusal administrative processing, as happened here.") (cleaned up).

Courts considering visa applications refused under § 221(g) pending further administrative processing have reached differing conclusions regarding the doctrine's applicability. *Compare Sharifi v. Blinken*, 731 F. Supp. 3d 433, 437–38 (E.D.N.Y. 2024) (declining to apply the doctrine when, "in refusing [plaintiff's] visa application for further administrative processing under [§] 221(g), consular officials have taken no final action: though nominally 'refused,' [plaintiff's] visa application remains under consideration in a state of administrative limbo that cannot fairly be described as a final determination."), *and Ramizi*, 745 F. Supp. 3d at 258 (finding that the doctrine did not apply when "plaintiff[] [is] not challenging the consular officer's refusal of [plaintiff's] visa application, but rather the period of post-refusal administrative processing that has ensued after the refusal."), *with Nawaz*, 2024 WL 99486, at *4 (finding plaintiff's unreasonable delay claim was barred by the doctrine of consular nonreviewability where she challenged a visa refusal for further administrative processing because "[c]ourts in this [c]ircuit have expressly noted that,

notwithstanding caselaw in other circuits, a distinction between challenging a decision and compelling adjudication is not a distinction that has a basis in Second Circuit law")

The Court finds the reasoning of *Sharifi* and *Ramizi* more persuasive. Where a plaintiff seeks only to compel further agency action on a visa application that remains under consideration, rather than challenge the substance of a visa determination, judicial review does not implicate the core concerns underlying the doctrine of consular nonreviewability. *See Sharifi*, 731 F. Supp. 3d at 438 ("For the Court to exercise its authority over undue delay cases under such circumstances does not interfere with Congress' plenary powers nor disturb the doctrine of consular nonreviewability."). Accordingly, the doctrine of consular nonreviewability does not bar plaintiff's claims.

## B. Mootness

Plaintiff commenced this action seeking an order compelling defendants to schedule an immigrant visa interview for the beneficiary and derivative applicants and to issue a final decision on the underlying visa petition. Compl. at 8–9. Defendants respond that the action is now moot because the requested interview has occurred and the visa applications at issue have been adjudicated. Defs.' Mem. at 18–19. The Court is not convinced by this argument, either.

Federal courts are courts of limited jurisdiction and may adjudicate only live cases and controversies. U.S. Const. art. III, § 2. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). Accordingly, where intervening events make it impossible for a court to grant the relief sought by a plaintiff, the action must be dismissed as moot. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016).

Defendants argue that plaintiff's claims are moot because "[t]he consular officer took the only action required here—adjudicating the visa application on the day of the interview—by

refusing the visa." Defs.' Mem. at 18 (citing 8 U.S.C. § 1201(g); 22 C.F.R. § 42.81(a)); *see also* Dkt. No. 10-2 ¶ 4–5.

Courts have reached differing conclusions regarding whether a refusal under § 221(g) during administrative processing moots an action seeking to compel adjudication of a visa application. *Compare Esghai v. U.S. Dep't of State*, 2024 WL 4753799, at *3 (S.D.N.Y Nov. 12, 2024) (holding that a § 221(g) refusal did not moot a claim seeking completion of administrative processing because "the consular[ ] officer['s] refusal does not deprive [plaintiff] of a personal stake in this litigation because he seeks different relief here: a further decision on [the visa] application."), *and Pars Equality Ctr. v. Blinken*, 2024 WL 4700636, at *10 (N.D. Cal. Nov. 5, 2024) (finding persuasive "the reasoning contained in the decisions of numerous other courts that have found a [§] 221(g) refusal does not operate as a final decision under facts as alleged here" and collecting cases), *with Liew v. Sanders*, 737 F. Supp. 3d 30, 37 (D.D.C. 2024) (finding plaintiff's claim moot because "[the] State [Department] has already discharged the only duty it owes [plaintiff]—to either 'issue the visa' or 'refuse the visa under INA § 212(a) or 221(g).'").

Drawing all reasonable inferences in plaintiff's favor, the Court rejects defendants' argument. Although the visa applications have been refused pursuant to § 221(g), the record reflects that they remain subject to administrative processing. *See* Dkt. No. 10-2 ¶ 5. Plaintiff therefore retains a concrete interest in the completion of that process and the ultimate disposition of the applications. *See Sharifi*, 731 F. Supp. 3d at 438 ("Since [plaintiff's] visa application has not yet been finally resolved, [p]laintiff's complaint is not mooted by USCIS's purported 'refusal' pursuant to [§] 221(g)."). Accordingly, the Court concludes that the § 221(g) refusal did not moot plaintiff's claims.

## C. Plaintiff's Mandamus Act and APA Claims

The Court now turns to the merits of plaintiff's Mandamus Act and APA claims.  Plaintiff requests that the Court "declare the defendants' delay in both the scheduling of the aforementioned interview and administrative processing of the plaintiff's visa petition is a violation of the Mandamus Act and APA" and "compel the defendants . . . to take all necessary and appropriate action to schedule beneficiary and all derivative applicants for their consular interview without further delay, as well as issue a final decision on the underlying visa petition."  Compl. at 9 (cleaned up).

Under the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a clear nondiscretionary duty."  *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988).

To obtain mandamus relief, a plaintiff must demonstrate "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available."  *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (quoting *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972)).

Plaintiff's claims under 5 U.S.C. § 706(1) and 5 U.S.C. § 555(b) "are substantively the same, challenging a purported unreasonable delay by USCIS."  *Sharifi*, 731 F. Supp. 3d at 439.  The APA tasks courts with "compel[ling] agency action unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1).  However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004) (emphases in original).  The

APA also provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).

Accordingly, plaintiff's mandamus and APA claims turn on the same threshold question: whether defendants remain subject to a mandatory duty capable of judicial enforcement.  *See Ramizi*, 745 F. Supp. 3d at 256 ("Because the governing standards are substantially the same, the court will consider [plaintiff's APA and mandamus] claims together.").  Although the analyses overlap, mandamus is an extraordinary remedy requiring a clear and nondiscretionary duty, whereas relief under § 706(1) of the APA requires identification of a discrete agency action that the agency is legally obligated to perform.  *See Pittston Coal Grp.*, 488 U.S. at 121; *SUWA*, 542 U.S. at 64.

Defendants argue that no discrete, nondiscretionary duty exists because the applications were adjudicated when a consular officer refused them pursuant to § 221(g) on the day of the interview.  Defs.' Mem. at 17–20.  The Court is not persuaded.

As discussed *supra*, the § 221(g) refusal neither rendered this action moot nor triggered the doctrine of consular nonreviewability.  Those conclusions rest on the determination that the applications remain in administrative processing and continue to be subject to further review.  *See* Dkt. No. 10-2 ¶ 5; Defs.' Mem. at 15; *Ahmed v. Blinken*, 759 F. Supp. 3d at 10 n.3 ("A [§] 221(g) refusal is not a final adjudication of a visa application.").

At the pleading stage, defendants' alleged continuing obligation is sufficient to satisfy the threshold requirement that plaintiff identify a discrete agency action defendants are required to take.  Section 1202(b) provides that immigrant visa applications "shall be reviewed and adjudicated by a consular officer," while § 555(b) requires agencies to conclude matters presented to them "within a reasonable time."  Although defendants contend that any duty imposed by those

provisions was satisfied upon the entry of the § 221(g) refusal, courts considering visa applications that remain in administrative processing have reached differing conclusions. *See Pars Equality Ctr.*, 2024 WL 4700636, at \*10–12, *but see Ramizi*, 745 F. Supp. 3d at 259–61.

At this stage, the Court finds persuasive the reasoning of *Pars Equality Center* and similar decisions recognizing that a § 221(g) refusal pending administrative processing does not necessarily mark the completion of the adjudicative process. *See Pars Equality Ctr.*, 2024 WL 4700636, at \*10–12; *see also Ahmed v. Blinken*, 759 F. Supp. 3d at 10 ("Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations."). Accordingly, plaintiff has adequately identified a discrete agency action that defendants are required to take and may pursue relief under § 706(1) of the APA.

Having concluded that plaintiff has adequately alleged the existence of a continuing duty subject to judicial review, the remaining question is whether the alleged pace of defendants' action is so unreasonable as to warrant relief under the APA. On this point, defendants argue that any delay is reasonable as a matter of law. *See* Defs.' Mem. at 20–27.

In evaluating APA unreasonable delay claims, courts generally turn to the familiar six-factor text set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"). Those factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a

higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up).  Some courts have held that "the unreasonable delay inquiry is typically too fact-specific to be decided on a motion to dismiss." *See Pars Equality Ctr.*, 2024 WL 4700636, at *11 (collecting cases).  Others have done so on the pleadings.  *See Liew*, 737 F. Supp. 3d at 37–39 (applying *TRAC* factors and dismissing claim); *Ahmed v. Bitter*, 2024 WL 22763, at *6–8 (E.D.N.Y. Jan. 2, 2024) (same).

At the pre-answer stage, the Court's task is not to determine whether plaintiff ultimately will establish an unreasonable delay, but only whether the complaint plausibly alleges one. Here, plaintiff alleges that the applications became documentarily qualified in May 2024 and that, despite satisfying all requested requirements, defendants have continued administrative processing without reaching a final resolution.  *See* Compl. ¶¶ 16–17.

Although the unreasonable-delay inquiry is often fact intensive, dismissal is appropriate where the allegations and materials properly before the Court demonstrate that the challenged delay is reasonable as a matter of law.  *See Brzezinski v. U.S. Dep't of Homeland Sec.*, 2021 WL 4191958, at *4 (D.D.C. Sept. 15, 2021) (quoting *Sarlak v. Pompeo*, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)) (noting that the *TRAC* "factors have been employed at the motion to dismiss stage" when "the 'record contains enough facts to evaluate [them]'").

Here, consideration of the *TRAC* factors weighs against relief.  "The first factor is the most important TRAC factor, and is typically considered together with the second TRAC factor." *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022) (internal citations and quotations

omitted).  Together, the first two *TRAC* factors ask "'whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale.'"  *Dennis v. Blinken*, 2023 WL 4764576, at *5 (D. Md. July 26, 2023) (quoting *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)); *see also Begum v. U.S. Dep't of State*, 2022 WL 16575703, at *7 (D. Md. Oct. 31, 2022) (explaining that the first two factors "focus on the reasonableness of the delay and whether Congress has set a timeline for the completion of the action in question").

Defendants argue that "case law—which finds any purported delay not unreasonably long even after years as opposed to a few months—supports dismissal here."  Defs.' Mem. at 24.  The Court agrees.  Congress has supplied no timetable governing the completion of administrative processing for immigrant visa applications, and plaintiff identifies no statute or regulation requiring adjudication within a specified period.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide."  *Sarlak v. Pompeo*, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).  And "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  *Id.* at *6.  "Many courts have 'declined to find a two-year period to be unreasonable as a matter of law[,]' especially when the agency provides a reasonable explanation for the delay and 'regularly revisit[s] the question' of whether visa processing can proceed.'"  *Begum*, 2022 WL 16575703, at *7 (quoting *Ghadami v. United States Dep't of Homeland Sec.*, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020)).

Here, the earliest proper starting date when considering plaintiff's unreasonable delay claim is May 7, 2024, the date plaintiff's visa petition was deemed documentarily qualified.

Compl. ¶ 16; *see Ahmed v. Bitter*, 2024 WL 22763, at *7–8 ("At the earliest, the [d]efendants could not have acted until . . . a visa number became available."); *Mahmood v. U.S. Dep't of Homeland Sec.*, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) ("Similar cases seem to focus on the delay from the last Government action to the issuance of the opinion.").

Plaintiff commenced this action on August 3, 2025, approximately fifteen months after the petition became documentarily qualified.  Even assuming the relevant period extends through the present, the delay at issue remains substantially shorter than delays that courts have routinely found insufficient to state a plausible unreasonable-delay claim.  *See, e.g.*, *Begum*, 2022 WL 16575703, at *6 (collecting cases concluding that delays of three to five years were not unreasonable); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 225 (E.D.N.Y. 2021) ("[C]ourts in this circuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable.").

"The burden is on the plaintiff to plausibly allege unreasonable delay, and 'other than the passage of time, plaintiff has given the court no basis on which to conclude that the process of adjudicating her petition has been unreasonably prolonged or delayed.'"  *Ahmed v. Bitter*, 2024 WL 22763, at *8 (quoting *Almakalani*, 527 F. Supp. 3d at 225 (E.D.N.Y. 2021) (cleaned up)). That observation applies with equal force here.  Plaintiff has not opposed defendants' motion and, in any event, has offered no basis other than the passage of a relatively short amount of time from which the Court could infer that defendants have unreasonably delayed adjudication of the applications.

The remaining *TRAC* factors do not alter this conclusion. Although the Court does not discount the hardship that continued administrative processing may impose on plaintiff and the beneficiary applicants, those interests are present in virtually every visa-delay case.  More

importantly, granting the requested relief would necessarily require defendants to prioritize plaintiff's applications ahead of others awaiting adjudication.

Courts have repeatedly recognized that such relief risks improperly interfering with the agency's allocation of finite resources and competing priorities. *See, e.g.*, *Lee v. Blinken*, 2024 WL 639635, at \*6 (D.D.C. Feb. 15, 2024) ("[Plaintiff] do[es] not present any argument . . . as to why their requested relief would not amount to a judicial reordering of agency priorities.") (internal quotations omitted).

Notably, plaintiff has filed no opposition to defendants' motion and therefore has not responded to defendants' arguments regarding the *TRAC* factors or identified any authority supporting a contrary conclusion. Considering the *TRAC* factors as a whole, and without any reason advanced by plaintiff's counsel to conclude otherwise, plaintiff has failed to plausibly allege a delay so egregious as to warrant relief under either the APA or the Mandamus Act.

### D. Remaining APA Claims

The Court will also dismiss plaintiff's remaining counts for failure to state a claim. As to her 5 U.S.C. § 706(2)(A) claim, plaintiff argues that "[d]efendants have unreasonably delayed administrative action and have failed to act in ways consistent with their statutory obligations under the INA and the APA, all of which are arbitrary and capricious as well as a violation of 5 U.S.C. § 706(2)(A)." Compl. ¶ 40.

That claim fails because § 706(2)(A) empowers courts to set aside final agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See* 5 U.S.C. § 706(2)(A). Plaintiff does not identify any final agency action subject to review under that provision. Instead, the complaint challenges the pace at which defendants processed the visa applications. Such allegations are properly analyzed, if at all, under § 706(1) and § 555(b), which address agency action unlawfully withheld or unreasonably delayed. *See Lee*, 2024 WL 639635, at

*7 ("Even assuming the plaintiff[] intended to plead a § 706(2)(A) claim, when review is sought under a general review provision of the APA, like [§] 706(2)(A), the agency action in question must be final agency action.") (internal quotations omitted).  Moreover, because plaintiff identifies no final agency action subject to review, she fails to state a claim under § 706(2)(A).

Plaintiff's claim under 5 U.S.C. § 551(13) likewise fails.  Section 551(13) merely defines "agency action" for purposes of the Administrative Procedure Act; it does not itself impose any independent substantive obligation on agencies or create a standalone cause of action.  *See* 5 U.S.C. § 551(13).  To the extent plaintiff invokes that provision in support of her APA theory, any purported claim under § 551(13) is duplicative of her unreasonable-delay allegations under § 706(1) and § 555(b), which the Court has already concluded fail under the *TRAC* framework. Accordingly, plaintiff's § 551(13) claim will be dismissed.

## V.    CONCLUSION

For the reasons set forth above, defendants' motion to dismiss pursuant to Rule 12(b)(1) is DENIED, and defendants' motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.  The complaint is dismissed. Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss (Dkt. No. 10) is GRANTED in part and DENIED in part.

2.  Plaintiff's complaint (Dkt. No. 1) is dismissed.

The Clerk of the Court is directed to terminate the pending motion.

**IT IS SO ORDERED.**

Dated: July 23, 2026
      Utica, New York.

Anthony J. Brindisi
U.S. District Judge